1   **WO**

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Michelle Hinckley,                        No. CV-25-00927-PHX-SHD

10                  Plaintiff,                 **ORDER**

11  v.

12  All American Waste Services Incorporated,
    et al.,
13

14                  Defendants.

15          Pending before the Court are Plaintiff Michelle Hinckley's (1) Motion to Proceed

16  Under a Pseudonym, (Doc. 1); (2) Application for Leave to Proceed In Forma Pauperis

17  ("IFP"), (Doc. 2); and (3) Motion to Allow Electronic Filing, (Doc. 3).  For the reasons

18  explained below, Hinckley's application to proceed IFP and motion to allow electronic

19  filing are **granted**.   Hinckley's motion to proceed under a pseudonym is **denied**.

20  Hinckley's Title VII claim against Defendant All American Waste Services, Inc. ("All

21  American") is **dismissed with leave to amend**, and Hinckley's claims against the

22  individual defendants are **dismissed without leave to amend**.  Hinckley's claim under the

23  Arizona Civil Rights Act (the "ACRA") against All American may proceed.

24  **I.      BACKGROUND**

25          On March 20, 2025, Hinckley filed the instant motions.  (Docs. 1–3.)  On April 9,

26  2025, Hinckley filed her Complaint.  (Doc. 7.)

27          Hinckley asserted claims under Title VII of the Civil Rights Act of 1964 and the

28  ACRA, Ariz. Rev. Stat. §§ 41-1461, *et seq.*  (Doc. 7 at 3.)  She named All American, her

1    former employer, as a defendant, along with the company's owner and his son, Todd and

2    Tanner Shell,[1] and the "director of the company's nationwide military, government, and

3    emergency contracts," Adam McGhan.  (*Id.* at 5.)  In her Complaint, Hinckley alleges the

4    defendants unlawfully discriminated against her, harassed her, and terminated her in

5    retaliation for complaining about their conduct.  (*Id.*)  She requests compensatory damages

6    for lost wages and benefits due to her wrongful termination, emotional distress damages,

7    punitive damages, and attorneys' fees and costs.  (*Id.* at 26.)

8         She asserts All American hired her to "directly assist Tanner Shell in creating a new

9    social media and email marketing department as a way to provide economic growth for the

10    company as . . . Todd Shell was planning on retiring."  (*Id.* at 5.)  Then, in April 2023, she

11    "received an unexpected onslaught of 80–90 back-to-back messages from [Tanner]

12    between midnight and 2:00 AM," which included "verbal harassments, veiled threats,

13    demeaning insults, and sexually harassing comments."  (*Id.* at 6.)  This altercation ended

14    in Tanner purporting to fire Hinckley.  (*Id.*)

15         The next morning, Hinckley attempted to inform Todd of the incident, but because

16    he was out of town, she confided in McGhan.  (*Id.* at 7.)  McGhan "confirmed the texts

17    were inappropriate and disturbing and proceeded to tell [Hinckley] via text that he believed

18    [Tanner] was 'threatened' by [Hinckley] and informed her that [Todd was] well aware of

19    [Tanner's] behaviors and [had] to handle Tanner and 'act as a buffer' between Tanner and

20    other employees."  (*Id.*)

21         When Hinckley and McGhan later met in person, McGhan warned Hinckley  "that

22    [Todd] has the financial means and uses them to protect [Tanner] and to 'take care' of

23    issues that arise given his financial means and his ties with the city of Mesa."  (*Id.* at 8.)

24    Hinckley responded she was "now afraid for the safety of herself and her kids," and

25    McGhan replied "by instructing her to not give [Tanner] her new address or work phone

26    number."  (*Id.*)

27         Hinckley attempted to set up other meetings with Todd, but "every meeting and

28    _____

[1]    The Court will refer to the Shell defendants by their first names to avoid confusion, not out of any disrespect.

1    phone call [was] rescheduled until May 3rd, 2023 when he stopped responding to requests

2    completely." (*Id.* at 9.)  On June 9, 2023, however, Todd introduced his nephew to

3    Hinckley, notifying her that he hired the nephew to take over Tanner's responsibilities.

4    (*Id.*) Other than this, Todd "never spoke privately with [Hinckley] or allowed for a meeting

5    or conversation to take place about the harassment and what would happen next." (*Id.*)

6         Yet, after this meeting, McGhan "confided in [Hinckley] saying 'do not tell Todd

7    about this, but I just had a meeting with [Todd's nephew] and Todd and [the nephew]

8    started asking why [Hinckley] even had a position or job [at All American], that it's not a

9    real position, and [the nephew's] sister would do it for free.'" (*Id.* at 9–10.)  Then in July

10   2023, Todd "called [Hinckley] into the office . . . and stated that [his nephew] would now

11   be taking over all email marketing, significantly reducing [her] roles and duties." (*Id.* at

12   10.)  When Hinckley asked Todd for a "meeting to now clarify her job and role," Todd

13   responded that McGhan would "get back to" her, but from that point "McGhan drastically

14   reduced all communication with" Hinckley. (*Id.*)

15        This reduction in communication resulted in Hinckley not being provided any

16   logistical information for a large company event, "making it impossible [for her] to attend."

17   (*Id.* at 10–11.)  Hinckley "attempt[ed] to get into contact with [McGhan] multiple times

18   prior to the event to discuss all details, and the day before the event to let [him] know that

19   she would be unable to attend because her husband and son were hospitalized." (*Id.* at 11.)

20   McGhan "did not try to contact her until the day after the event ended, simply texting, and

21   asking how the event went." (*Id.*)  When Hinckley responded that "she had not attended

22   because of lack of logistics and her family emergency," McGhan "never responded and

23   never messaged [her] again until one full month later, the day after she was terminated for

24   not attending" the event. (*Id.*)

25        On January 18, 2024, Hinckley filed a charge with the Arizona Civil Rights Division

26   ("ACRD"), which investigated the circumstances surrounding Hinckley's termination; she

27   and All American submitted statements. (*See id.* at 12, 25.)  Hinckley alleges All American

28   submitted a "misleading response" that contained "numerous malicious and egregious

1  falsehoods" to both the ACRD and, subsequently, to the Equal Employment Opportunity

2  Commission ("EEOC"), about the nature of her employment and termination.  (*Id.* at 11–

3  12.)  The EEOC issued a Notice of Right to Sue on January 29, 2025.  (*Id.* at 24.)

## II.    IFP APPLICATION

Before turning to Hinckley's Complaint, the Court first addresses her request to proceed IFP in this case.  "There is no formula set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status."  *Escobedo v. Applebees*, 787 F.3d 1226, 1235 (9th Cir. 2015).  "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life."  *Id.* at 1234 (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)).

Here, the Court has reviewed the application to proceed IFP.  (Doc. 2.)  The Court finds Hinckley cannot pay the filing fee and still afford necessities.  Accordingly, the motion will be granted.

## III.   SCREENING THE COMPLAINT

Because Hinckley is proceeding IFP in this case, the Court must screen her Complaint.

### A.    Legal Standard

> Congress provided with respect to in forma pauperis cases that a district court "shall dismiss the case at any time if the court determines" that the "allegation of poverty is untrue" or that the "action or appeal" is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  While much of section 1915 outlines how prisoners can file proceedings in forma pauperis, section 1915(e) applies to all in forma pauperis proceedings, not just those filed by prisoners.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). "It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim."  *Id.*  Therefore, this court must dismiss an in forma pauperis complaint if it fails to state a claim or if it is frivolous or malicious.

*Kennedy v. Andrews*, 2005 WL 3358205, at *2 (D. Ariz. 2005).

1
2
3
4
5
6

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

7

*Hairston v. Juarez*, 2023 WL 2468967, at *2 (S.D. Cal. Mar. 10, 2023).

8

### B.    Claims Against All American

9
10
11
12
13
14
15
16
17
18
19
20

Hinckley's Title VII claim against All American will be dismissed because Hinckley did not allege that All American meets the statutory definition of an "employer"—*i.e.*, that All American "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Cox v. Glob. Tool Supply LLC*, 2020 WL 4464384, at *1 (D. Ariz. 2020) (quoting 42 U.S.C. § 2000e(b)). This is "an essential element of her claim," such that "failing to plead the employee numerosity requirement is grounds for dismissal." *Id.* The Court will grant Hinckley leave to amend this claim, as Hinckley could possibly allege facts sufficient to demonstrate that All American falls within Title VII's definition of "employer." *See Lopez*, 203 F.3d at 1130 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)).

21
22
23
24
25
26
27
28

Hinckley, however, sufficiently states her claim against All American under the ACRA, to survive screening, because she claims she was terminated after reporting she was sexually harassed by Tanner. *See Randall v. United Parcel Serv. Inc.*, 2024 WL 1071185, at *2 (D. Ariz. 2024) ("[S]exual harassment is sex discrimination. By tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment . . . ." (citation and quotation marks omitted)); *id.* at *5–6 (finding that a plaintiff sufficiently alleged a retaliation claim under the ACRA where the plaintiff reported harassing "conduct towards her" and her employer threatened

to transfer her within a three-month span of her reporting); *McPhail v. Cox Com, Inc.*, 2011 WL 5006665, at \*5 (D. Ariz. 2011) ("Plaintiff would need to allege facts establishing a discriminatory motive in order to sustain a claim under ACRA. Plaintiff has done so by alleging that he was fired shortly after his wife developed a disability."); *Lombardi v. Copper Canyon Acad., LLC*, 2010 WL 3775408, at \*7 (D. Ariz. 2010) (denying motion to dismiss ACRA claim where the plaintiff "alleged sufficient facts . . . to assert a claim that her termination was at least in part the result of retaliation against her for opposing age discrimination"). Although the ACRA has a similar definition of "employer"—requiring at least fifteen employees—the ACRA also includes within this definition a "person who has one or more employees . . . to the extent that the person is alleged to have . . . [d]iscriminated against anyone for opposing sexual harassment." Ariz. Rev. Stat. § 41-1461(7)(a).

Because the Complaint alleges the existence of at least two people employed by All American (Hinckley and McGhan), and Hinckley alleges she was terminated for "opposing sexual harassment," All American meets the ACRA's definition of "employer." The Court thus allows Hinckley's ACRA claim against All American to proceed past this preliminary screening, but it does so without prejudice to All American making any motions it deems appropriate. *Coleman v. Maldonado*, 564 F. App'x 893, 894 (9th Cir. 2014) (per curiam) (a district court may properly grant a motion to dismiss despite a prior screening order finding the complaint stated a claim); *Jones v. Sullivan*, 2020 WL 5792989, at \*5 (N.D.N.Y. 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6).").

### C.    Claims Against Individual Defendants

Hinckley's claims against the individual defendants Todd, Tanner, and McGhan are dismissed with prejudice because neither Title VII nor the ACRA imposes "individual liability on employees." *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993); *Addy v. State Farm Ins. Cos.*, 2010 WL 1408886, at \*2 (D. Ariz. 2010) ("Neither Title VII of the Civil Rights Act of 1964 or the Arizona Civil Rights Act permit liability to run

1 to individual defendants."); *see also Nash v. Arizona*, 2009 WL 10673385, at *1 (D. Ariz.

2 2009) ("Individuals may not be held liable for violations of Title VII . . . ; [this] statute[]

3 appl[ies] only to employers."); *Barkclay v. Wal-Mart, Stores, Inc.*, 2007 WL 4410257, at

4 *3 (D. Ariz. 2007) ("[A]s a matter of law, Plaintiff is barred from asserting a Title VII

5 claim against [the individual defendants]."). Because amendment would be futile, the

6 Court does not grant Hinckley leave to amend her claims as to Todd, Tanner, and McGhan.

7 *See Lopez*, 203 F.3d at 1130.

8 **D.    Leave to Amend**

9 If the Court determines that a pleading could be cured by the allegation of other

10 facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal

11 of the action. *See id.* at 1127–29. The Court's finding of futility itself may justify not

12 granting leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

13 As stated above, here, the Court cannot conclude that amendment of Hinckley's

14 Title VII claim against All American would be futile. This conclusion is based on the

15 possibility that Hinckley could allege additional facts concerning whether All American

16 meets the statutory definition of "employer." Accordingly, the Court will give Hinckley

17 the opportunity to amend her Title VII claim against All American. The Court does not

18 give Hinckley leave to amend her claims against Todd, Tanner, and McGhan because, as

19 explained above, Title VII and the ACRA do not permit such claims, so any amendment

20 would be futile.

21 Hinckley must take note that an amended complaint supersedes the original

22 complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v.

23 Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). Thus, after amendment, the

24 Court will treat the original complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause

25 of action that was raised in the original Complaint and that was voluntarily dismissed or

26 was dismissed without prejudice is waived if it is not alleged in an amended complaint.

27 *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

28

- 7 -

1
2
3
4
5
6
7
8
9

**IV.    PSEUDONYMITY**

Hinckley moves to proceed under a pseudonym in this case to "protect her privacy, prevent potential harassment or retaliation, and safeguard her personal and professional reputation while allowing public access to the case." (Doc. 2 at 1.)  She states that, because of the "nature of [her] allegations, including sexual harassment and retaliation, [she] is concerned about potential further harm if her full name remains publicly accessible." (*Id.* at 1–2.)  She is amenable, however, to "allowing Defendants to receive her real identity under seal," so she argues "proceeding under a pseudonym will not prejudice them in defending against these claims." (*Id.* at 2.)

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings and Rule 10(a)'s command that the title of every complaint include the names of all the parties." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (citations and quotation marks omitted).  "When a party requests 'Doe' status, the factors to be balance[d] . . . against the general presumption that parties' identities are public information, are": (1) "the severity of the threatened harm," (2) "the reasonableness of the anonymous party's fears," and (3) "the anonymous party's vulnerability to such retaliation." *Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (alterations in original) (quotation marks omitted).  Courts should also consider whether "the public's interest [is] best served by requiring plaintiffs to reveal their identities," *Advanced Textile*, 214 F.3d at 1069, and will only allow a party to proceed under a pseudonym in unusual cases, *Ayers*, 789 F.3d at 946; *United States v. Doe*, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007) (considering this relief warranted in "exceptional cases"); *see also Advanced Textile*, 214 F.3d at 1069 (permitting plaintiffs to proceed under a pseudonym "based on the extreme nature of the retaliation . . . coupled with their highly vulnerable status").

26
27
28

The Court denies Hinckley's request.  As an initial matter, the Court notes that Hinckley filed her motions and her complaint using her full name, and "once information is public, it is no longer confidential." *Coppinger v. Don Sanderson Ford Inc.*, 2025 WL

1000738, at \*2 (D. Ariz. 2025); *see also id.* at \*3 ("[T]he complaint has been public for months, so there is nothing in it that could be deemed confidential."); *cf. United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008) ("We question the value that pseudonymity would have for Stoterau at this point.  Stoterau's conviction is a matter of public record, and many of the documents in his case were not submitted under seal."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("[W]hen information that is supposed to be confidential . . . is publicly disclosed . . . it necessarily remains public . . . . Once the cat is out of the bag, the ball game is over." (quotation marks omitted)).  Further, if the Court were to grant Hinckley's request for pseudonymity, the Court would be required to seal all documents already filed in this case, "which weighs even further against anonymity."  *Doe v. Revature LLC*, 2023 WL 4583470, at \*8 (W.D. Wash. 2023).

Even if Hinckley had not already disclosed her full name on the public docket, however, the Court would still find that the circumstances of this case do not warrant allowing her to proceed under a pseudonym.  Hinckley's case is not unusual, as many plaintiffs file claims involving sexual harassment or similar conduct in federal court.  *See, e.g.*, *Stoterau*, 524 F.3d at 1012–13 ("[B]ecause this concern is equally present for all similarly situated [individuals] . . . , we cannot say that [the plaintiff's] case is unusual."); *see also Tolton v. Day*, 2019 WL 4305789, at \*4 (D.D.C. 2019) (noting that the plaintiff's status as an adult and the fact that the suit was brought against a private party, rather than the government, counseled against pseudonymity).  Hinckley's allegations of sexual harassment may be sensitive and personal, "but they are no more sensitive than the allegations in many other cases involving allegations of" sexual harassment.  *Coppinger*, 2025 WL 1000738, at \*3; *see also S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying pseudonymity where the plaintiffs "face[d] no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits").  Other courts have denied requests to proceed under a pseudonym in cases with allegations more severe than those present here.  *See, e.g.*, *Doe*

1   *v. Mahboubi-Fardi*, 2024 WL 2206640, at \*4 (C.D. Cal. 2024) (plaintiff's allegations of

2   domestic violence did "not rise to the same level of severity of the allegations in . . . past

3   cases in which plaintiffs were permitted to proceed under pseudonyms").

4          In addition, Hinckley's alleged harm is not sufficiently severe that it would weigh

5   in favor of pseudonymity.  Hinckley alleges that she may be subject to "potential further

6   harm" such as "potential harassment or retaliation" by unknown parties, (Doc. 2 at 1), but

7   such vague assertions are insufficient.  *See Doe v. Brixinvest, LLC*, 2021 WL 886249, at

8   \*7 (C.D. Cal. 2021) ("[T]he Court finds that Plaintiff only alleges speculative fears that he

9   may be retaliated against.  The Court is not persuaded by these speculations because

10  Defendant and its employees are already privy to John Doe's real name.  John Doe is also

11  no longer employed by Defendant so there is no possibility of future retaliation within the

12  workplace." (citation omitted));  *Tolton*, 2019 WL 4305789, at \*3 ("Vague and

13  unsubstantiated fears of retaliation are not sufficient to support pseudonymous

14  treatment. . . .  To permit pseudonymous treatment based on speculation of this type risks

15  opening the door to similar treatment in any case in which a former employee alleges that

16  [a company] engaged in loathsome misconduct.  Opening that door, however, risks closing

17  the door on broad, public access to the judicial process.");  *Qualls v. Rumsfeld*, 228 F.R.D.

18  8, 12 (D.D.C. 2005) ("The Court understands that bringing litigation can subject a plaintiff

19  to scrutiny and criticism and can affect the way plaintiff is viewed by coworkers and

20  friends, but fears of embarrassment or vague, unsubstantiated fears of retaliatory

21  actions . . . do not permit a plaintiff to proceed under a pseudonym.").[2]  Nor are vague

22  references to reputational harm sufficient.  *Revature*, 2023 WL 4583470, at \*6 ("[A]

23  generalized fear of harm to one's personal reputation or professional reputation, even if it

24

25  _____

    [2]      Although Hinckley indicated in her Complaint that one of the now-dismissed
26  individual defendants has violent tendencies, (Doc. 7 at 8, 22), she also stated that the
    defendants "have prior knowledge of [her] identity" and that she is amenable to "allowing
27  Defendants to receive her real identity under seal," (Doc. 2 at 2), so use of a pseudonym
    would not mitigate any risk of disclosure to the defendants.  *See Mahboubi-Fardi*, 2024
28  WL 2206640, at \*5 ("[I]t is undisputed that Defendants already know Plaintiff's name and
    identity.  Therefore, allowing Plaintiff to proceed anonymously would not *per se* limit
    harassment, retaliation . . . or other misconduct.  Further, should such misconduct occur,
    Plaintiff could seek appropriate, legal remedies." (citation omitted)).

1  might result in economic harm, is not enough to justify anonymity."). Because Hinckley's

2  alleged harm is so vague, the Court is unable to weigh the reasonableness of her fears or

3  whether Hinckley is especially vulnerable. *Ayers*, 789 F.3d at 945.

4      Ultimately, if the Court were to permit Hinckley to proceed under a pseudonym here

5  based solely on her allegations of sexual harassment and speculative allegations of harm,

6  "there would be no principled basis for denying pseudonymity" to individuals making

7  similar claims, which would be "contrary to [this Circuit's] long-established policy of

8  upholding the public's common law right of access to judicial proceedings and contrary to

9  [its] requirement that pseudonymity be limited to the unusual case." *Stoterau*, 524 F.3d at

10  1013 (citation and quotation marks omitted); *see also Tolton*, 2019 WL 4305789, at *4

11  ("[T]he fact that she has brought suit against her former employer does not constitute the

12  type [of] sensitive or personal information that justifies pseudonymous treatment.").

13  Hinckley has "chosen to proceed in this litigation and must accept that, in conjunction with

14  that process, [her] name will be made publicly available." *Revature*, 2023 WL 4583470,

15  at *8.

16      Because the "people have a right to know who is using their courts," and Hinckley

17  has not demonstrated that the circumstances of her case are so exceptional or unusual as to

18  warrant proceeding under a pseudonym, the Court denies her request. *Stoterau*, 524 F.3d

19  at 1013 (citation omitted).

20  **V.    MOTION TO ALLOW ELECTRONIC FILING**

21      The Court grants Hinckley's request to allow electronic filing, subject to the below

22  conditions.

23      Accordingly,

24      **IT IS ORDERED denying** Hinckley's motion to proceed under a pseudonym (Doc.

25  1).

26      **IT IS FURTHER ORDERED granting** Hinckley's application for leave to

27  proceed in forma pauperis, without prepayment of costs or fees or the necessity of giving

28  security therefore (Doc. 2).

1    **IT IS FURTHER ORDERED granting** Hinckley's motion to allow electronic

2  filing by a party appearing without an attorney (Doc. 3) in this case only.  Hinckley is

3  required to comply with all rules outlined in the District of Arizona's Case

4  Management/Electronic Case Filing Administrative Policies and Procedures Manual, have

5  access to the required equipment and software, have a personal electronic mailbox of

6  sufficient capacity to send and receive electronic notice of case related transmissions, be

7  able to electronically transmit documents to the Court in .pdf, complete the necessary forms

8  to register as a user with the Clerk's Office within five days of the date of this Order (if not

9  already on file), register as a subscriber to PACER (Public Access to Court Electronic

10  Records) within five days of the date of this Order (if this has not already occurred), and

11  comply with the privacy policy of the Judicial Conference of the United States and the E-

12  Government Act of 2002.

13    Any misuse of the ECF system will result in immediate discontinuation of this

14  privilege and disabling of the password assigned to the party.

15    **IT IS FURTHER ORDERED** that the Clerk of the Court shall provide a copy of

16  this Order to the Attorney Admissions/Admin Clerk.

17    **IT IS FURTHER ORDERED dismissing without prejudice** Hinckley's Title VII

18  claim in her Complaint (Doc. 7) against All American, and **dismissing with prejudice**

19  Hinckley's claims against Todd Shell, Tanner Shell, and Adam McGhan.  The Clerk of

20  Court is directed to terminate Todd Shell, Tanner Shell, and Adam McGhan as defendants.

21    **IT IS FURTHER ORDERED** that Hinckley may file a First Amended Complaint

22  ("FAC") and amend her Title VII claim against All American Hinckley within **30 days** of

23  the date of this Order.

24    **IT IS FURTHER ORDERED** that if Hinckley files an Amended Complaint, the

25  Clerk of the Court shall not issue subpoenas until the Court screens the Amended

26  Complaint and orders service consistent with 28 U.S.C. § 1915(d).

27    **IT IS FURTHER ORDERED** that if Hinckley does not file a FAC within 30 days

28  of this Order, service by waiver or service of the summons and Complaint shall be at

government expense on All American by the United States Marshal or his authorized representative. *See* 28 U.S.C. § 1915(d).

The Court directs the following if Hinckley does not file a FAC:

(1)     The Clerk of Court must send Hinckley a service packet including the Complaint (Doc. 7), this Order, USM-285, and both summons and request for waiver forms for All American.

(2)     Hinckley must complete and return the service packet to the Clerk of Court within 60 days of the date of filing of this Order. The United States Marshal will not provide service of process if Hinckley fails to comply with this Order. If Hinckley does not timely return the service packet, this action may be dismissed.

(3)     If Hinckley does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on the defendants within 90 days of this Order, the action may be dismissed. Fed. R. Civ. P. 4(m).

(4)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(5)     The United States Marshal must notify All American of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to the defendant must include a copy of this Order.

(6)     If All American agrees to waive service of the Summons and Complaint, it must return the signed waiver forms to the United States Marshal, not Hinckley, within 30 days of the date of the notice and request for waiver of service pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(7)     The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by All American within 30 days from the date the request for

1    waiver was sent by the Marshal, the Marshal must:

2    (a)    personally serve copies of the Summons, Complaint, and this Order

3           upon the defendants pursuant to Federal Rule of Civil Procedure

4           4(e)(2); and

5    (b)    within 10 days after personal service is effected, file the return of

6           service for All American, along with evidence of the attempt to secure

7           a waiver of service of the summons and of the costs subsequently

8           incurred in effecting service upon All American.  The costs of service

9           must be enumerated on the return of service form (USM-285) and

10          must include the costs incurred by the Marshal for photocopying

11          additional copies of the Summons, Complaint, or this Order and for

12          preparing new process receipt and return forms (USM-285), if

13          required.  Costs of service will be taxed against the personally served

14          defendant(s) pursuant to Federal Rule of Civil Procedure 4(d)(2),

15          unless otherwise ordered by the Court.

16   Dated this 14th day of July, 2025.

17

18

19

20

21          _____
            Honorable Sharad H. Desai
22          United States District Judge

23

24

25

26

27

28